UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| JOHN RICHARD McCART, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00009 |
| | ) |
| DUSTIN JACKSON, individually and | ) |
| as a Deputy Sheriff for the Cumberland | ) |
| County Sheriff's Department, | ) |
| JACOB MOORE, individually and as | ) |
| a Deputy Sheriff for the Cumberland | ) |
| County Sheriff's Department, | ) |
| PERRIANNA EVANS, individually | ) |
| and as a Deputy Sheriff | ) |
| for the Cumberland County Sheriff's | ) |
| Department, ELI TOLLETT, | ) |
| individually and as a Deputy Sheriff | ) |
| for the Cumberland County Sheriff's | ) |
| Department, CUMBERLAND COUNTY | ) |
| SHERIFF'S DEPARTMENT, | ) |
| CUMBERLAND COUNTY, | ) |
| TENNESSEE, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

In this civil rights action under 42 U.S.C. § 1983, Plaintiff alleges that Cumberland County, Tennessee, its Sheriff's Department, and several deputies violated his constitutional rights. Plaintiff also alleges that Defendants violated various state laws when they arrested him at his home. Defendants have moved for summary judgment on all of Plaintiff's claims, (Doc. No. 40), which Plaintiff opposes. For the reasons that follow, Defendants' Motion will be granted in its entirety.

## I. Factual Allegations

Defendants have filed a "Statement of Undisputed Facts in Support of Their Motion for Summary Judgment" (Doc. No. 43) that contains the following allegations:

1. Mr. McCart and Ms. Shelley Shull had an on again/off again relationship for several years.

2. In October 2020, deputies were called to the McCart residence due to a domestic dispute between Shelly Shull and the plaintiff.

2 [sic]. On or about February 5, 2021, a felony arrest warrant was issued for Ms. Shull.

3. Deputies tried to serve the warrant on February 6, 9, and 16, with no luck.

4. Thereafter, on February 16, 2021, knowing that Ms. Shull had lived on and off with Mr. McCart, Sgt. Jackson, Deputy Evans, and Deputy Tollett decided to go to the residence of Mr. McCart to see if Ms. Shull was there or to inquire for information as to her whereabouts.

5. Sgt. Jackson knocked on the door using the "Shave and a Haircut" rhythm.

6. Mr. McCart asked what they wanted, to which Jackson replied, "Sheriff's Department."

7. Mr. McCart looked out of the blinds and Sgt. Jackson said, "Howdy!" as he stood with his hands casually in his pockets.

8. Soon after, Plaintiff retrieved a gun and began walking to his kitchen.

9. Sgt. Jackson ordered Deputies Tollett and Evans to back up and turn their flashlights off so that they would not be targets.

10. Each deputy feared for their safety and felt that Mr. McCart was a potential threat.

11. Sgt. Jackson and Deputy Tollett ordered him to drop the gun repeatedly, but McCart ignored the commands.

12. According to Mr. McCart, he spun around indicating with the gun in hand and told the deputies to get off his property.

13. The deputies perceived that Mr. McCart was raising his gun in the direction of Deputy Jackson before finally being convinced to drop his weapon.

14. Mr. McCart was taken into custody for aggravated assault, for pointing his weapon at law enforcement after being advised that they were with the Sheriff's Office.

15. Deputy Moore arrived on scene after Mr. McCart was in custody.

16. A magistrate found probable cause and signed the warrant.

17. Judge Ridley also determined probable cause at a preliminary hearing and bound the case over to the grand jury.

(Id. at 1-3). This Statement of Facts was filed in accordance with Local Rule 56.01(b). Also in accordance that Rule, Defendants' statement included a citation to the record for the fact asserted and provided space for a response by Plaintiff.

Responses to statement are also governed by Local Rule 56.01. So far as relevant, the Rule provides:

> (c) Response to Statement of Facts. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant by either:
>
> > (1) Agreeing that the fact is undisputed;
> >
> > (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or
> >
> > (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record.
>
> The response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant. In either case, the non-movant must make a response to each fact set forth by the movant immediately below each fact set forth by the movant. Such response must be filed with the papers in opposition to the motion for summary judgment. In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as

to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact must be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute. A copy of the statement of additional disputed facts must also be provided to opposing counsel in an editable electronic format.

L.R. 56.01(c). Plaintiff's response to Defendants' Statement of Facts fails to comply with several of the foregoing requirements.

For one, his response is not directly below Defendants' statement, either in the space provided for a response, or in a separate filing. This may seem like a technical violation but it precludes the Court from looking at one document to determine if a given fact is disputed, not disputed, or irrelevant, which is the purpose of the rule in the first place.

Next, although Plaintiff agrees that six statement of facts are undisputed, his dispute as to the remaining twelve are not in compliance with the Local Rules. A few examples suffice.

1. In Statement 3, Defendants assert, as a fact, that "Deputies tried to serve the warrant on February 6, 9, and 16, with no luck." (Doc. No. 43 at 2). In response, Plaintiff writes:

> **STATEMENT NO. 3:** This Statement is disputed. Neither the Plaintiff nor members of the Plaintiff's household were contacted, notified or otherwise alerted to attempts made by deputies to serve an arrest warrant on Shelly Shull prior to the Plaintiff's arrest on February 16, 2021. Law enforcement officers certainly were not at the Plaintiff's home in an effort to serve an arrest warrant upon Shelly Shull prior to February 16, 2021. (Deposition of John McCart, pp. 109-110; Affidavits of Amy McCartt and Kelly Morgan McCartt). The felony arrest warrant was one for the arrest of Shelly Shull which was signed by the Plaintiff and was for the theft of the Plaintiff's property. The address on the arrest warrant for Shelly Shull was 487 Ozone Road in Cumberland County. (Deposition of John McCartt, p. 109). Shelly Shull had not been in or around the Plaintiff's home since October of 2020. (Deposition of John McCartt, p. 71; Affidavits of Amy McCartt and Kelly Morgan McCartt).

(Doc. No. 48 at 2).

As a preliminary matter, this passage and those that follow are not in the same font or size

4

as that used in this Memorandum Opinion because Plaintiff did not comply with this Court's Administrative Practice and Procedure for Electronic Case filings manual and specifically the requirement in provision 2.6 that "PDF is the format in which electronically filed documents must be transmitted to the Electronic Filing System." www.tnmd.uscourts.gov/sites/tnmd/files/AO167-1. Plaintiff can hardly complain that this was a mistake or that he was unaware of this requirement because a "NOTICE TO FILER" was entered on the docket in relation to a prior filing warning Plaintiff that "Documents generated from a word processor (Word or WordPerfect) should NOT be scanned, but rather printed directly to PDF via a PDF writer. Document must be text searchable." (Doc. Notation for 8/4/2022) (emphasis in original). Again this may seem trivial or technical but the failure to comply with this requirement precludes the Court from searching documents or copying formatable passages without having to retype them in their entirety.

The failure to comply with the system requirements for CM/ECF to the side, Plaintiff's response does not directly address Defendants' statement. The statement in question does not say that Defendants repeatedly tried to serve the warrant at Plaintiff's house, a point made abundantly clear in Defendants' next statement. The remainder of Plaintiff's response is his version of events that, by rule, are required to be set forth in a separate statement of facts (with space for a response) so that Defendants could respond. L.R. 56.01(c)

**2.** Statement 7 reads: "Mr. McCart looked out of the blinds and Sgt. Jackson said, 'Howdy!' as he stood with his hands casually in his pockets." (Doc. No. 43 at 3). In response, Plaintiff writes:

> **STATEMENT NO. 7:** This Statement is disputed. Law enforcement officers were beating on the glass door to the Plaintiff's bedroom. (Deposition of John McCartt, p. 111, 112, 114, 133, 134). Law enforcement officers were beating on the Plaintiff's bedroom door glass – not knocking. (Deposition of John McCartt, p. 111, 112, 114, 133, 134). The Plaintiff did not hear anyone announce themselves as Sheriff's Department. The Plaintiff looked out the window and saw people dressed in black. They were screaming at the Plaintiff to step outside. They were demanding that the Plaintiff step outside. (Deposition of John McCartt, pp. 136 and 137; Affidavits of Amy McCartt and Kelly Morgan McCartt). When law enforcement officers began beating on the Plaintiff's glass bedroom door, the Plaintiff jumped up out of bed, opened a drawer, grabbed his pistol, went to the door and had the gun at his side to where the individuals outside of the door knocking on the door could not see the gun. When the Plaintiff flipped open the blinds, he saw a man dressed in all black, black jacket, black pants and black ski mask saying step outside. The man never said "I am from the Sheriff's Department" nor was wearing or displaying anything which indicated he was a law enforce officer. ((Deposition of John McCartt, p. 111, 112, 114, 133, 134; Affidavits of Amy McCartt and Kelly Morgan McCartt).

(Doc. No. 48 at 4-5).

Again, this is non-responsive because nowhere in Statement 7 do Defendants claim that they knocked loudly or otherwise, and nowhere in *this* statement do Defendant claim they announced themselves as being from the Sheriff's Department. Beyond that, this response sets out new factual allegations that were required by Local Rule to be set out separately.

**3.** In Statement 9, Defendants assert that "Sgt. Jackson ordered Deputies Tolliett and Evans to back up and turn their flashlights off so that they would not be targets." (Doc. No. 43 at 3). In response, Plaintiff writes:

> **STATEMENT NO. 9:** This Statement is disputed. After looking outside, the Plaintiff immediately grabbed his phone and called 911 and advised 911 that three (3) people were trying to break into the back of his house. He could see the shadow of two (2) people when he looked out the window. No one ever said "Sheriff's Department". The Plaintiff told the law enforcement intruders to get off the property. The Plaintiff never pointed a gun at law enforcement officers. When the 911 dispatcher told the Plaintiff that the people outside were the Police Department, the Plaintiff put the gun down, went over to a sliding glass of John McCartt, p. 111, 112, 113, 114, 133, 134; Affidavits of Amy McCartt and Kelly Morgan McCartt).

6

(Doc. No. 48 at 6-7).

Once again, this is non responsive. Nowhere in *this* statement do Defendants claim that Plaintiff pointed a gun at them or that they said "Sheriff's Department." Also, once again, Plaintiff's response adds factual allegations that were required by rule to be set out separately.

Although Plaintiff has wholly failed to comply with the Local Rules pertaining to statements of fact, the Court understands the gist of his position. Even acknowledging those facts, however, Plaintiff has not countered Defendants' showing that they are entitled to summary judgment.

## II. Legal Discussion

Plaintiff's claim against the Sheriff's Department must be dismissed because he concedes in his filings that "the Cumberland County Sheriff's Department is not a legal entity and, not subject to suit such that a dismissal of this Defendant from this litigation would be appropriate." (Doc. No. 47 at 2). Indeed, the law on this is quite clear. Brinkley v. Loftis, No. 3:11-CV-1158, 2012 WL 2370106, at *3 (M.D. Tenn. June 22, 2012) (collecting cases for the proposition that "Federal district courts in Tennessee have frequently and uniformly held that police departments and sheriff's departments are not proper parties to a § 1983 suit"). Plaintiff's claims against Deputy Jacob Moore must also be dismissed because Plaintiff concedes that Deputy Moore did not arrive on scene until after Plaintiff was in custody. Again the law is clear – a defendant must have some personal involvement in the alleged constitutional deprivation to be found liable. Fazica v. Jordan, 926 F.3d 283, 289 (6th Cir. 2019).

Moreover, and more fundamentally, Plaintiff's claims fail against each Defendant because he did not file a brief in support of his response. This, too, is in contravention of the Local Rules:

[A]ny party opposing a motion must serve and file a memorandum of law in

7

> response, and, if necessary to support assertions of fact, affidavits and depositions, not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. The response shall not exceed twenty-five (25) pages without leave of Court. If a timely response is not filed, the motion shall be deemed to be unopposed[.]

L.R. 7.01(a)(3). Although Plaintiff purports to rely upon his "contemporaneously filed" Memorandum of Law, (Doc. No. 47 at 2), no such memorandum was filed. Further by failing to file a memorandum, Plaintiff has waived any arguments he may have had. Allstate Ins. Co. v. Glob. Med. Billing, Inc., 520 F. App'x 409, 412 (6th Cir. 2013); Humphrey v. U.S. Att'y Gen.'s Office, 279 F.App'x 328, 331 (6th Cir.2008). Nevertheless, the Sixth Circuit has stated that, because the party moving for summary judgment always bears the burden or persuasion, a "court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged [his initial] burden." Stough v. Mayville Cmty. Sch., 138 F.3d 612, 614 (6th Cir. 1998). Defendants unquestionably have done so.

**A. Federal Claims**

   *1. Excessive Force against the Individual Defendants*

Defendants raise qualified immunity as a defense to Plaintiff's excessive force claim. "Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights." DiLuzio v. Vill. of Yorkville, 796 F.3d 604, 608 (6th Cir. 2015). Once the defense is raised, a plaintiff must come forward with evidence from which a jury could find "(1) that the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011). Both prongs must be met, and judges "can exercise

8

their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Here, the Court need not exercise that discretion because Plaintiff has not pointed to any evidence showing that his constitutional rights were violated or that this right (whatever it was) was clearly established. For this reason alone summary judgment is warranted. It is also warranted on the merits.

Presumably, Plaintiff's position is that he was subjected to excessive force because guns were pointed at him on February 16, 2021 when officers attempted to serve the arrest warrant for Ms. Schull at his home. However, he has not shown that such a right was clearly established under the circumstances of this case.

"'For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holzemer v. City of Memphis, 621 F.3d 512, 527 (6th Cir. 2010) (quoting, Leonard v. Robinson, 477 F.3d 347, 355 (6th Cir. 2007)). " 'A right is clearly established if there is binding precedent from the Supreme Court, the Sixth Circuit, the district court itself, or other circuits that is directly on point.'" Id. (quoting Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir. 2002)). "[T]he plaintiff has the burden of showing that a right is clearly established" such that "a reasonable official in [defendant's] position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." Barrett v. Steubenville City Sch., 388 F.3d 967, 970 (6th Cir. 2004).

Plaintiff has made no effort to show his clearly established right to be free from excessive force was violated in this case. To be sure, an "officer's decision to point a gun at an unarmed

9

civilian who objectively poses no threat to the officer or the public can certainly sustain a claim of excessive force." Wright v. City of Euclid, 962 F.3d 852, 866 (6th Cir. 2020) (collecting cases). On the other hand, it is not excessive force for officers to shoot a suspect when he or she aims their weapon at the officers or others. Presnall v. Huey, 657 F. App'x 508, 512 (6th Cir. 2016). Neither occurred here, however.

Plaintiff undisputedly had a gun (that he claims not to have pointed at the officers) and the officers unholstered their weapons in turn. It was incumbent upon Plaintiff to point to a case with facts analogous to those at hand and he has not done so. This is fatal to his excessive force claim. It is even more so when one considers that being armed "pose[s] a serious and present danger to the safety of the officers," Pennsylvania v. Mimms, 434 U.S. 106, 112 (1977), and, therefore, "drawing a weapon on an individual does not necessarily mean that excessive force has been used[.]" Murray ex rel Morrow v. Metro. Gov't of Nashville, No. 3:06-0570, 2007 WL 1521004, at *6 (M.D. Tenn. May 21, 2007) (collecting cases).

Besides, Plaintiff's version of events does not square with the body camera videos worn by the officers that were manually filed as of record in this case. Contrary to Plaintiff's assertion that the officers did not identify themselves, the videos demonstrate that the officers repeatedly announced they were from the "Sheriff's Department." Also, contrary to Plaintiff's suggestion that he was compliant and only made a phone call, the videos establish that he was repeatedly told to "drop the gun," but did not do so. These repeated orders also undercut Plaintiff's assertion that he was holding his gun in such a way that the officers could not see it.

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the

facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Thus, where a video "blatantly contradicts" a plaintiff's version of the facts, the Court cannot "blindly defer to [his] version just because he is the non-movant at summary judgment." Marvin v. City of Taylor, 509 F.3d 234, 249 (6th Cir. 2007). The videos here show that officers pointed their weapons at an individual who was repeatedly ordered to drop his weapon who did not comply. Those are the facts.

### 2. *Violation of Civil Rights against Cumberland County*

In his Complaint, Plaintiff alleges that Cumberland County is liable for failing to: properly train its employees; discipline its employees, and follow the Constitution and state law. However, in the absence of any individual liability, there can be no municipal liability. Smith v. Pike Cnty., 338 F. App'x 481, 482 (6th Cir. 2009); Smith v. Pike Cnty., Kentucky, 338 F. App'x 481, 482 (6th Cir. 2009). Summary judgment will be granted in favor of Cumberland County on the federal claims because he cannot show that any of the individual Defendants are liable.

### B. State law Claims

Plaintiff brings an assortment of negligence claims against Cumberland County and the Sheriff's Department, including negligent hiring, failure to train, and failure to discipline. He also brings both an intentional and a negligent infliction of emotional distress claim against the individual Defendants on the grounds that he was subjected to excessive force and probable cause did not exist to support his arrest. Those claims fail.

### 1. *Negligence Claims Against the County and Sheriff's Department*

Plaintiff's negligence claims are barred by Tennessee's Governmental Tort Liability Act ("TGTLA") that provides, with some exceptions, sovereign immunity to the state, municipalities and

11

their entities.  Tenn. Code Ann. § 29–20–101 *et seq*.  However, the Act "removes immunity for 'injury proximately caused by a negligent act or omission of any employee within the scope of his employment,' but provides a list of exceptions to this removal of immunity." Johnson v. City of Memphis, 617 F.3d 864, 872 (6th Cir. 2010) (quoting Tenn.Code Ann. § 29–20–205).  "Injuries that 'arise[ ] out of . . . civil rights' are one such exception, that is, sovereign immunity continues to apply in those circumstances [and] has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitution." Id.; Devereux v. Knox Cnty., Tennessee, 15 F.4th 388, 393 (6th Cir. 2021) (citation omitted).  This includes "suits claiming negligent injuries arising from civil rights violations." Johnson, 617 F.3d at 872. (6th Cir. 2010).  It also includes civil rights claims "couched" as negligence, such as "negligent hiring, training, retention, and supervision of its employees." Tinkle v. Dyer Cnty., No. 18-01124-STA-EGB, 2018 WL 6840155, at *1 (W.D. Tenn. Dec. 31, 2018); see also, Dillingham v. Millsaps, 809 F. Supp. 2d 820, 852 (E.D. Tenn. 2011) ("Plaintiffs' negligence claim against Monroe County is nothing more than civil rights claim: it is still based upon an underlying claim of 'excessive force.'  As a basis for their negligence claim, Plaintiffs allege that Monroe County was negligent in its 'failure to train[.]"); Herron v. Dugger, No. 10-2775-STA, 2011 WL 2882146, at *5 (W.D. Tenn. July 15, 2011) ("Based on the [TGTLA], the Court holds that the City is entitled to immunity from suit on claims of negligent hiring and training pursuant to the 'civil rights' exception in Tenn. Code Ann. § 29–20–205(2).").

Because Cumberland County and its Sheriff's Department are entitled to sovereign immunity, summary judgment will be granted in their favor on Plaintiff's negligence claims.

### 2. *Intentional and Negligent Infliction of Emotional Distress Claim Against the Individual Defendants*

With regard to a claim for intentional infliction of emotional distress under Tennessee law, this Court previously observed in Doe v. Belmont Univ.:

> In Tennessee, the tort of intentional infliction of emotional distress ("IIED") is synonymous with the tort of outrageous conduct. Lyons v. Farmers Ins. Exch., 26 S.W.3d 888, 893 (Tenn. Ct. App. 2000). Under Tennessee law, a plaintiff must establish the following elements to support a claim for IIED: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). To say that Tennessee courts narrowly define "outrageous conduct" would be something of an understatement. The conduct must be "atrocious," "utterly intolerable," and "beyond all bounds of decency." Goldfarb v. Baker, 547 S.W.2d 567, 569 (Tenn. 1977).

334 F. Supp. 3d 877, 903 (M.D. Tenn. 2018). Even accepting Plaintiff's version of events as true, he has utterly failed to show that Defendant's conduct was atrocious or beyond all bounds of decency.

Plaintiff's negligent infliction of emotional distress claim fares no better. In a later opinion in Doe, this Court set out Tennessee law governing such claims:

> The elements of a claim for negligent infliction of emotional distress include the elements of a general negligence claim, as well as the additional requirement that a plaintiff must prove that a defendant's conduct caused a serious or severe emotional injury. Rogers v. Louisville Land Co., 367 S.W.3d 196, 206 (Tenn. 2012) (citations omitted). A serious or severe injury occurs "where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." Id. at 210. "[T]oo much trivial or modest emotional disturbance occurs in modern life for the law to attempt to provide universal peace of mind," and the severe mental injury component helps "to avoid the judicial system being flooded with potentially fraudulent, manufactured, or overstated claims arising from the transient and trivial emotional distress of daily life[.]" Foster v. Aramark, No. 3:13-516, 2014 WL 1961245, at *7 (M.D. Tenn. May 14, 2014) (internal quotation marks and citation omitted).

13

367 F. Supp. 3d at 765 (M.D. Tenn. 2019).

Plaintiff has not come close to showing that the events of February 16, 2021 caused him any emotional distress, let alone that it was serious or severe. Nor has he shown unlawful action by Defendants that could serve as the basis for this claim. He claims that he was subjected to excessive force in violation of the constitution, but that has already been dispelled. As for the supposed lack of probable cause, Plaintiff asserts that he "did not commit any offense supporting his arrest and certainly not aggravated assault." (Doc. No. 48 at 7). A judge, however, found otherwise at a preliminary hearing (Doc. No. 42-2), and this forecloses any argument under either state of federal law that probable cause was lacking. Smith v. Thornburg, 136 F.3d 1070, 1077 (6th Cir.1998); State v. Ragland, No. W201700464CCAR3CD, 2017 WL 3535018, at *2 (Tenn. Crim. App. Aug. 17, 2017).

### III. Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment will be granted and this case will be dismissed.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE